IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs March 7, 2006

**STATE OF TENNESSEE v. COY PIERCE**

**Appeal from the Circuit Court for Dyer County**
**No. C04-453     Lee Moore, Judge**

———————————

**No. W2005-01355-CCA-R3-CD  - Filed April 25, 2006**

———————————

The defendant, Coy Pierce, was convicted of driving under the influence (DUI), fourth offense, a Class E felony, and driving on a revoked license, a Class A misdemeanor.  The trial court imposed sentences of two years for the DUI and eleven months and twenty-nine days for the driving on a revoked license.  The trial court ordered that the sentences be served concurrently and that the defendant serve seven months in confinement with the remainder to be served on community corrections.  On appeal, the defendant contends that he was denied a fair trial (1) as a result of prosecutorial misconduct and (2) as a result of the trial court's ruling that the defendant could not enter a photograph into evidence.  We affirm the judgments of the trial court in part but remand the driving on a revoked license case for entry of a corrected judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed in Part,**
**Case Remanded for Entry of a Corrected Judgment**

JOSEPH M. TIPTON, J., delivered the opinion of the court, in which GARY R. WADE, P.J., and NORMA MCGEE OGLE, J., joined.

Charles M. Agee, Jr., Dyersburg, Tennessee, for the appellant, Coy Pierce.

Paul G. Summers, Attorney General and Reporter; David H. Findley, Assistant Attorney General; and C. Phillip Bivens, District Attorney General, for the appellee, State of Tennessee.

**OPINION**

This case relates to the defendant's driving under the influence in a parking lot which caused the defendant to hit a parked car.  Before the trial, the defendant entered a guilty plea to driving on a revoked license with sentencing to be determined by the trial court, and only the DUI was presented to the jury for determination of guilt.

At the trial, Dyer County Sheriff's Deputy Heath Walker testified that on March 5, 2004, shortly after 11:00 p.m., he drove down Highway 211 and into the parking lot at Pearl's Place. He said he saw a Dodge pickup truck in the parking lot with the front passenger side fender against an unoccupied parked car. He said he saw the parked car shake as the truck backed up. He said the truck drove around the front of the building while he and another car went through the same opening the truck had tried to use. He said that neither he nor the other car had any difficulty maneuvering through the parking lot because there was plenty of space. He said he went to the front of Pearl's Place and was able to stop the truck before it left the parking lot. He said he walked up to the truck and asked the defendant to step out. He said that he could smell alcohol on the defendant and that the defendant stumbled as he stepped out of the truck. He said the defendant told him, "I just want to get home. I just need to get home." He said that when he searched the truck, he found an open can of cold beer in the floorboard.

Deputy Walker testified that he brought the defendant to the law enforcement center where the defendant was asked to perform field sobriety tests. He said that he asked the defendant to do the one-leg stand and the nine-step walk and turn but that the defendant was unable to complete either test. He said the defendant did not tell him he had a medical condition which prevented him from being able to complete the tests. He said the defendant did not consent to providing a breath or blood sample and told him, "I'm not gonna take the test because I've been told I can - - how to beat a DUI."

On cross-examination, Deputy Walker acknowledged that he did not count the number of cars in the parking lot at Pearl's Place on March 5, 2004, but said there may have been about forty cars. He acknowledged that Pearl's Place was often busy and that most of the parking was in the back of the building and next door to it. He said that he pulled into the parking lot in the back of Pearl's Place and that a car was in front of him. He said he saw the defendant's truck against a parked car and saw the defendant drive in reverse around to the front of building. He acknowledged that the defendant parked in front of Pearl's Place and that he did not see the defendant hit anything else. He acknowledged he did not see anything erratic about the defendant's driving. He acknowledged he did not measure the width of the area between the cars where he and the defendant had driven. He explained that the defendant dented his truck behind the bumper and that the defendant "busted the tail light and dented in the back fender" of the other car. He said he believed the defendant was going to leave without reporting the accident because he drove around to the front of the building. He acknowledged he would not have been able to get through the parking lot if the defendant had not driven in reverse to the front of the building.

Dyer County Sheriff's Deputy Lynn Waller testified that on March 5, 2004, he went by Pearl's Place and saw the defendant and Deputy Walker there. He said that when he arrived, the defendant was sitting in the back of the patrol car and that he opened the door to talk to the defendant. He said the defendant had blood shot eyes and slurred speech. He said he had seen the defendant at Pearl's Place before. He said he saw damage to the other car but did not see any damage to the defendant's truck. He said that based on his conversation with the defendant and his observations, he did not believe the defendant could operate a car safely.

The defendant testified that he arrived at Pearl's Place at 7:45 p.m. after working all day putting a roof on a house. He said he had a Dr. Pepper and maybe three beers while at Pearl's Place. He said that he was in his truck leaving the back parking lot and that another car and Deputy Walker's car were driving in. He said he tried to move over to let the cars through but he bumped a parked car because there was not enough space. He said that his truck was not damaged and that he did not see any damage to the other car. He said he put his truck in reverse, drove to the front of the building, and parked in front of the building. He said that the parking lot was very crowded and that the path to drive through the parking lot was only about eight to ten feet wide. He said Deputy Walker did not turn on his blue lights until he had parked in front of the building and was getting out of his truck. He said that Deputy Walker asked him what he was doing and that he told Deputy Walker, "I was fixing to have to go back in the bar to tell the waitress in there I'd bumped the car in the very back."

The defendant identified a photograph of the parking lot outside the front of Pearl's Place and marked on the photograph where his truck had been parked. The defendant drew a sketch of the parking lot behind Pearl's Place which showed where he remembered cars were parked. He said he did not take the breathalyzer test because he had been told "numerous times not to take a blood alcohol test because if you've drunk any beer at all you will fail." He said he could not count to thirty while doing the one-leg stand because he had worked all day, was extremely tired, and had injured his back numerous times. He said that on the nine-step heel to toe test, he took nine steps and turned on the tenth step but that Deputy Walker said he failed the test for taking the tenth step.

On cross-examination, the defendant acknowledged that he had been roofing a house on the day of the offense but stated he had done very little of the physical work because he had a hurt back. He acknowledged that Deputy Walker read him the implied consent form and that he refused to submit to the breathalyzer test. He acknowledged taking a beer from Pearl's Place to drink on the way home.

Deputy Walker testified on rebuttal that the photograph of Pearl's Place previously identified by the defendant was not to scale. He said the lane of travel between the parked cars was approximately twenty-five to thirty feet. He said that there was plenty of space to drive between the cars and that he had no difficulty driving through the parking lot. He said two cars would have been able to pass in the parking lot except at the bottleneck where the accident occurred. On cross-examination, Deputy Walker denied that he determined the lane of travel to be twenty-five to thirty feet wide after hearing the defendant testify that the distance was eight to ten feet wide.

The jury found the defendant guilty of DUI. The defendant waived his right to have the jury determine the existence of prior DUI convictions. After comparing the defendant's driving record with the convictions shown in the indictment, the trial court found the defendant guilty of DUI, fourth offense. The trial court held a sentencing hearing for both the DUI and the driving on a revoked license and ordered the defendant to serve an effective sentence of two years with seven months to be served in the Dyer County Jail with the remainder to be served on community corrections.

The defendant contends that he was denied a fair trial as a result of misconduct by the prosecutor in introducing evidence that the officer had seen the defendant at Pearl's Place before. The defendant also contends he was denied a fair trial as a result of the trial court's ruling that the defendant could not enter into evidence a photograph of the parking lot at Pearl's Place. The state contends the defendant waived his evidentiary claims for failing to raise them in a motion for a new trial pursuant to Rule 3(e) of the Tennessee Rules of Appellate Procedure. The state asserts in the alternative that the trial court did not err. The state contends the defendant agreed the state could elicit the testimony that the defendant now complains was prosecutorial misconduct. The state also contends the trial court correctly ruled the defendant could not enter the photograph into evidence because the defendant had drawn illustrations which were not to scale and may have misled the jury.

We first must address the defendant's notice of appeal which states the docket number being appealed is C04-453 and that the defendant "hereby appeals . . . from the Judgment entered on May 31, 2005." Both the driving on a revoked licence and DUI judgments have the docket number C04-453 and were entered on May 31, 2005. Therefore, both judgments are covered by the notice of appeal. However, the issues presented for review involve only evidentiary issues that arose at the trial. None of the issues presented relate to the defendant's guilty plea to driving on a revoked license. Therefore, we affirm the judgment for driving on a revoked license but remand the case for entry of a corrected judgment. The judgment for driving on a revoked license states that there was a jury trial, that the defendant's sentence is seven months, and that the offense is Count 1. However, the record reflects that the defendant pled guilty to driving on a revoked license, that the sentence length was eleven months and twenty-nine days with seven months to be served in the county jail and the remainder to be served on community corrections, and that driving on a revoked license was the second count charged in the indictment.

Next, we must address the state's contention that the defendant has waived his evidentiary claims for failing to raise the claims in a motion for a new trial. A sentencing hearing was held and the judgment entered for the DUI conviction on May 31, 2005. The defendant filed a notice of appeal on June 9, 2005. The record does not reflect that the defendant filed a motion for new trial.

Tennessee Rule of Appellate Procedure 3(e) provides that

> in all cases tried by a jury, no issue presented for review shall be predicated upon error in the admission or exclusion of evidence, jury instructions granted or refused, misconduct of jurors, parties or counsel, or other action committed or occurring during the trial of the case, or other ground upon which a new trial is sought, unless the same was specifically stated in a motion for new trial; otherwise such issues will be treated as waived.

(Emphasis added). "Failure to file a written motion for new trial within the required thirty days not only results in the appellant losing the right to have a hearing on the motion, but it also deprives the appellant of the opportunity to argue on appeal any issues that were or should have been presented in the motion for new trial." State v. Martin, 940 S.W.2d 567, 569 (Tenn. 1997).

-4-

Pursuant to Rule 52(b) of the Tennessee Rules of Criminal Procedure, we have the discretion to notice an error that has affected the substantial rights of an accused when necessary to do substantial justice. In the present case, defense counsel told the trial court he had no objection to Officer Waller testifying that he had seen the defendant at Pearl's Place on earlier occasions. Additionally, the defendant was allowed to enter one photograph of the parking lot into evidence and drew a diagram on the chalkboard to illustrate his testimony. The trial court did not allow the admission of a second photograph which had been marked previously by the defendant to show the position of the cars in the parking lot because the drawings were not to scale and may have been misleading. Plain error does not exist in the record before us.

### CONCLUSION

Based upon the foregoing and the record as a whole, we affirm the trial court, but we remand the driving on revoked license case for entry of a corrected judgment.

_____
JOSEPH M. TIPTON, JUDGE